UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| VINCENT P. RIZZO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | CIVIL ACTION |
| | ) | NO.  08-11365-JGD |
| MICHAEL J. ASTRUE, Commissioner | ) | |
| Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OF DECISION AND ORDER
ON CROSS-MOTIONS RELATING TO DENIAL
OF SUPPLEMENTAL SECURITY INCOME BENEFITS**

March 31, 2010

DEIN, U.S.M.J.

## I.  INTRODUCTION

This is an action under section 205(g) of the Social Security Act, 42 U.S.C.

§ 405(g), challenging the final decision of the Commissioner of the Social Security

Administration (the "Commissioner") denying the claim of the plaintiff, Vincent P. Rizzo

("Mr. Rizzo"), for Supplemental Security Income ("SSI") benefits.  Presently before the

court is Mr. Rizzo's "Motion to Reverse the Decision of the Commissioner of Social

Security" (Docket No. 12), by which the plaintiff is seeking an order directing the

payment of benefits or, in the alternative, remanding the matter for further administrative

proceedings.  Also before the court is the "Defendant's Motion for an Order Affirming

the Decision of the Commissioner" (Docket No. 14) by which the Commissioner is

seeking a ruling affirming his decision on the ground that it is supported by substantial evidence in the record.

The fundamental issue raised by the parties' motions is whether the Administrative Law Judge ("ALJ"), in reaching his decision that Mr. Rizzo was not disabled, erred by rejecting the opinion of a reviewing agency physician that Mr. Rizzo's residual functional capacity ("RFC") limited him to light work, and concluding instead that Mr. Rizzo had the RFC to perform the full range of medium work.  It is undisputed that if the ALJ had accepted the reviewing physician's opinion, which is the only RFC in the record addressing the plaintiff's physical limitations, the ALJ would have been compelled to find Mr. Rizzo disabled pursuant to the Social Security regulations known as the "grid" rules. However, because the ALJ determined that Mr. Rizzo was capable of performing medium work, the grid rules directed a finding that the plaintiff was not disabled.

As detailed herein, this court finds that while the ALJ was not required to accept the reviewing physician's opinion regarding the plaintiff's capacity to perform light work, the ALJ erred by reaching a conclusion about the plaintiff's capacity to perform the full range of medium work unaided by an RFC assessment by an expert, and that therefore, the ALJ's decision was not based on substantial evidence.  This court also finds that under the circumstances presented here, the matter must be remanded so that the Commissioner may take further functional evidence.  Therefore, and for all the reasons described below, the plaintiff's motion is ALLOWED IN PART and DENIED IN PART. Specifically, the plaintiff's request for an order awarding benefits is denied, but his

request to remand the matter to the Commissioner is allowed for further development of the record regarding the plaintiff's RFC. The Commissioner's motion to affirm the decision to deny benefits is DENIED.

## II. STATEMENT OF FACTS[1]

### Procedural History

Mr. Rizzo applied for SSI benefits on September 6, 2006, claiming that he had been disabled and unable to work since April 1, 2005 due to mental illness and back problems.[2] (Tr. 109, 113). His application was denied after initial review on January 11, 2007. (Tr. 51-53, 67-69). It was denied again on July 21, 2007, following a review by a Federal Reviewing Official. (Tr. 58-66).

The plaintiff subsequently requested and was granted a hearing before an ALJ. (Tr. 77-82). The hearing took place on February 5, 2008. (Tr. 17-50). Mr. Rizzo, who was represented by counsel, appeared and testified at the hearing. (Id.) A vocational expert also testified at the hearing. (Id.). On April 16, 2008, the ALJ issued a decision denying the plaintiff's application for benefits on the grounds that Mr. Rizzo "has not been under a disability, as defined in the Social Security Act, since September 6, 2006, the date the application was filed[.]" (Dec. Finding #10, Tr. 12).

---

[1] References to pages in the transcript of the record proceedings shall be cited as "Tr. __." The ALJ's decision shall be cited as "Dec." and can be found beginning at Tr. 4.

[2] Mr. Rizzo subsequently amended the alleged date of onset of his disability to coincide with the September 6, 2006 date of his application for benefits. (See Tr. 28).

The Decision Review Board selected Mr. Rizzo's claim for review, and on July 10, 2008, it affirmed the ALJ's decision, thereby making the ALJ's decision the final decision of the Commissioner for purposes of review.  (Tr. 14-16).  See also 20 C.F.R. § 405.420(b)(2).  Thus, the plaintiff has exhausted all of his available administrative remedies, and the case is ripe for review by this court pursuant to 42 U.S.C. § 405(g).

## Plaintiff's Background

Mr. Rizzo was born on February 28, 1952, and was nearly fifty-six years old at the time of his hearing before the ALJ.  (Tr. 100).  He is married, has two children, lives in Revere, Massachusetts, and is a high school graduate.  (Tr. 38, 100-01, 117).  After high school, Mr. Rizzo worked as debt collector for five years before going into construction.  (Tr. 114).  He claims that in about 1984, while he was working at a construction site, he fell and landed on his back.  (Tr. 23-24, 170).  Mr. Rizzo further claims that he has experienced lower back pain since the time of the accident.  (Tr. 170).

Mr. Rizzo has worked only sporadically and on a very part-time basis since 1984. Between 1984 and 2005, Mr. Rizzo's only work consisted of periodic interior painting jobs for relatives, a one month job unloading trucks for B.J.'s and a three month job for a construction company that involved sweeping a parking lot.  (Tr. 24-26, 170).  In 2005, the plaintiff performed about ten days worth of work for a friend who had a fencing company.  (Tr. 22-23).  According to Mr. Rizzo, that work required him to lift material, such as packs of mixing cement.  (Tr. 23).  The plaintiff contends that he has been unable

to work since that time due to chronic low back pain, anxiety and depression.  (Tr. 26,
113).

## Plaintiff's Medical History

Although the plaintiff claimed disability based on his back problems and mental
illness, the ALJ determined that Mr. Rizzo's only severe impairment was his low back
pain, and he proceeded to analyze the plaintiff's claim in accordance with that conclu-
sion.[3]  (See Dec. Finding #2, Tr. 7).  On appeal, the plaintiff does not challenge this
finding.  Therefore, the following facts are limited to those facts relevant to Mr. Rizzo's
back condition and do not describe the evidence pertaining to the plaintiff's mental health
condition.

Despite Mr. Rizzo's claim of chronic back pain related to his fall in 1984, the
record contains no medical records predating 2005.  On November 30, 2005, Mr. Rizzo
was seen in the emergency room at Whidden Memorial Hospital complaining of
"excruciating pain" after injuring his back lifting an 80 pound bag of concrete.  (Tr. 149,
151).  Doctors noted that in addition to his complaints of pain, Mr. Rizzo had difficulty
ambulating and getting up.  (Tr. 151).  After taking an x-ray of the plaintiff's lumbar
spine, Dr. Joseph Sequeira found no fracture or dislocation, but noted large osteophytes[4]

---

[3]  The ALJ found that Mr. Rizzo suffered from a number of non-severe impairments,
including depression, anxiety, high blood pressure, recent development of left knee pain and a
history of cocaine abuse, which has been in remission.  (Dec. 5).

[4]  Osteophytes are "pathological bony outgrowths."  Merriam Webster's Medical Desk
Dictionary at 572 (1986).

at the L3-L4 level.  (Tr. 150).  He concluded that Mr. Rizzo was suffering from "[d]egenerative changes in the lumbar spine."  (Id.).  Mr. Rizzo was discharged from the emergency room with prescriptions for Percocet and Motrin.  (Tr. 149).

The record indicates that Mr. Rizzo did not see a doctor again concerning his back condition for over a year.  On December 11, 2006, Dr. Donald Thomson, a Disability Determination Services ("DDS") physician, performed a consultative neurological examination of Mr. Rizzo.  (Tr. 170-72).  During the examination, Mr. Rizzo reported that he had been experiencing intermittent pain across his lower back since falling at his construction job in the early 1980s.  (Tr. 170).  He also reported that the pain radiates down the back of his left leg to the knee, that it is aggravated by prolonged sitting, prolonged standing and lifting objects, that he is incapable of lifting much weight, and that he has had some numbness at the back of both thighs.  (Id.).  According to Mr. Rizzo, a previous MRI examination of his lower spine had revealed "[s]lipped or ruptured discs" and surgery had been suggested.  (Id.).

Based on his neurological examination of Mr. Rizzo, Dr. Thomson determined, in relevant part, that straight leg raising of each leg and bent leg raising of Mr. Rizzo's left leg produced lower back discomfort.  (Tr. 172).  He also concluded that there was "dullness to pin in the left hand in a median nerve distribution[,]" as well as "dullness to pin in the distal left lower extremity in a L4 nerve root distribution."  (Id.).  The remainder of Mr. Rizzo's neurological examination was within normal limits.  (Id.).

On January 29, 2007, Mr. Rizzo was examined by Dr. John J. Lynch at North Suburban Orthopedic Associates in connection with the plaintiff's complaint that he had been experiencing back pain for one month as a result of lifting boxes of clothing.  (Tr. 184-85).  During his examination, Mr. Rizzo told Dr. Lynch that he had fractured his spine in the 1980s while working construction and that he had seen a spinal surgeon in the past.  (Tr. 184).  The plaintiff also reported that he had been diagnosed with lumbar strain and sciatica, that he had recently undergone an orthopedic examination and had been seen by a chiropractor, and that he was taking Percocet for pain.  (Id.).  Mr. Rizzo complained of pain across his back, which was greater on the left side and was exacerbated when he sat too long.  (Id.).

Dr. Lynch conducted an examination of the plaintiff, and reported as follows:

> Reveals some mild lower lumbar tenderness in midline and to the facet joints of 3, 4 and 5 levels with some additional mild myofascial tightness.  No overt spasm.  The patient's forward flexion, extension and lateral bending and rotation are within normal limits.  He is moving his lower extremities without significant difficulty.  Reflexes are intact, patella and Achilles.  Sensation is distally intact, [straight leg raises] mildly positive on the left vs. right.  Left leg was compared with right leg.

(Id.).  He also reviewed Mr. Rizzo's x-rays, and determined that they showed "some degenerative disc disease at L4-5, L5-S1."  (Id.).  Moreover, according to Dr. Lynch, the x-rays that had been taken in November 2005 at Whidden Memorial Hospital showed "just degenerative changes, no fracture."  (Id.).  Therefore, Mr. Rizzo's medical records were not consistent with his claim that he had suffered a fractured spine in the 1980s.

Dr. Lynch diagnosed Mr. Rizzo with "[d]egenerative disc disease, lumbar spine, L4-5, L5-S1" and ordered an MRI of Mr. Rizzo's lumbar spine in order to determine whether the plaintiff was suffering from spinal stenosis.  (Tr. 184-85).  He also prescribed Norco and directed the plaintiff to take over-the-counter Aleve.  (Tr. 185).

Mr. Rizzo underwent the MRI on January 31, 2007, and returned to Dr. Lynch on February 23, 2007.  (Tr. 181-83).  Following a physical examination, Dr. Lynch reported in relevant part that there was some persistent tenderness over the lower lumbar spine at L4-5, mostly along the edges of the spine into the muscles of the extensor muscle group, and that the plaintiff had some muscle weakness upon extension in the forward flexed position.  (Tr. 182).  However, Dr. Lynch also noted improvement on the left when Mr. Rizzo performed straight leg raises, and found that all of Mr. Rizzo's reflexes were intact. (Id.).  Furthermore, upon review of Mr. Rizzo's MRI, Dr. Lynch concluded:

> MRI suggests a minimal L4-5 disc bulge.  No evidence of focal disc herniation.  There is no significant degenerative changes.  The openings of the nerve are patent.  Essentially a benign negative MRI. He is still feeling some myofascial tightness and I believe this is more deconditioning and I am referring him to PT.  I would like to see him back in 6 weeks.  At this point it is unlikely that this MRI will assist him with disability case pending on his back.

(Id.).  Dr. Lynch diagnosed the plaintiff as having "[d]isc bulging with herniation[.]" (Id.).

On April 5, 2007, Mr. Rizzo began to see a chiropractor for lower back and neck pain.  (Tr. 209).  The record reveals that he saw the chiropractor six more times between April and May 2007, and that he received treatment on each of those occasions.  (Tr. 209-

212).  On May 11, 2007, Mr. Rizzo told the chiropractor that his condition had improved since beginning treatment.  (Tr. 212).  However, the chiropractor noted that the plaintiff was still experiencing some pain and tenderness.  (See id.).  After May 2007, there is only one additional chiropractic treatment note in the record, which is dated November 8, 2007.  (Tr. 208).  At that time, Mr. Rizzo complained of pain and stiffness in his neck and back that had started over the weekend.  (Id.).

### Reviewing Physician Opinion

In connection with Mr. Rizzo's application for SSI benefits, Dr. John Jao, a DDS physician, completed a physical RFC on January 9, 2007.  (Tr. 173-80).  Dr. Jao based his assessment on Mr. Rizzo's complaints of "chronic back pain with intermittent acute exacerbation" and his description of his daily living activities, as well as on Dr. Thomson's neurological examination and the 2005 x-ray report from Whidden Memorial Hospital.  (Tr. 174).  Upon review of this evidence, Dr. Jao determined that Mr. Rizzo could lift and/or carry 20 pounds occasionally and 10 pounds frequently.  (Id.).  He also determined that Mr. Rizzo could stand, walk and sit for about 6 hours in an 8-hour work day; push and pull on an unlimited basis; frequently climb, balance, kneel, crouch, and crawl; and occasionally stoop.  (Tr. 174-175).  Moreover, although Dr. Jao found that the plaintiff should avoid concentrated exposure to hazards such as machinery and heights, he concluded that Mr. Rizzo had no other environmental limitations, and had no manipulative, visual or communicative limitations.  (Tr. 176-77).  Based on his assessment of Mr. Rizzo's limitations, Dr. Jao opined that the plaintiff was capable of performing "light

work." (Tr. 174). There are no other RFC assessments in the record addressing Mr. Rizzo's physical limitations.[5]

## **The ALJ's Decision**

The ALJ concluded that since the date of his application for benefits, Mr. Rizzo has not been "under a disability," which is defined as "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment or combination of impairments that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months." (Dec. 2, Tr. 5). See also 42 U.S.C. § 1382c (a)(3)(A) (defining "disabled individual" for purposes of evaluating claims for SSI benefits). There is no dispute that the ALJ, in reaching his decision, applied the five-step evaluation required by 20 C.F.R. § 416.920. However, the plaintiff contends that the ALJ erred at the fifth step in his analysis by failing to find that the plaintiff was disabled per se pursuant to the applicable regulations.

In reaching his decision, the ALJ determined that the plaintiff had the physical capacity to lift and carry up to 50 pounds occasionally and up to 25 pounds frequently, and to sit, stand and walk for up to 6 hours in an average 8-hour work day with normal

---

[5] The record contains an assessment of Mr. Rizzo's psychiatric condition, which was performed by DDS psychologist Dr. Edwin Davidson. Dr. Davidson determined that Mr. Rizzo suffered from affective and anxiety-related disorders, as well as a substance addiction disorder that was in sustained remission, and he found that these disorders caused Mr. Rizzo moderate limitations in activities of daily living and maintaining social functioning, and moderate difficulties in maintaining concentration, persistence and pace. (Tr. 152, 155, 157, 160, 162, 166-67). Dr. Davidson also concluded that Mr. Rizzo "should be capable of working in an unpressured setting with some flexibility." (Tr. 168). As noted above, the plaintiff does not challenge the ALJ's determination that Mr. Rizzo's mental health conditions were not severe.

breaks. (Dec. Finding #4, Tr. 9). Thus, the ALJ determined that Mr. Rizzo had the capacity to lift the amount of weight necessary to perform "medium work." The ALJ rejected Dr. Jao's conclusion that the plaintiff was limited to "light work," i.e., an ability to lift and carry only 20 pounds occasionally and 10 pounds frequently. Compare 20 C.F.R. § 416.967(c) ("Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds") with 20 C.F.R. § 416.967(b) ("Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds"). Mr. Rizzo argues that it was improper for the ALJ to reject Dr. Jao's opinion that Mr. Rizzo had the RFC to perform only light work, and to conclude instead that Mr. Rizzo retained the RFC to perform work at the medium level of exertion with no other restrictions.

In making his finding as to Mr. Rizzo's RFC, the ALJ considered all of the plaintiff's symptoms and the extent to which they reasonably could be accepted as consistent with the objective medical evidence and other evidence in the record. (Dec. 6, Tr. 9). He also considered the opinion evidence that was available in the record. (Id.). After considering the plaintiff's allegations regarding the nature and extent of his back pain and other symptoms, and reviewing the available medical and other evidence, the ALJ determined that Mr. Rizzo's back condition could reasonably be expected to produce pain and other symptoms which limited his activity, but that the record was insufficient to establish the presence of disabling back pain or any other disabling impairments. (Dec. 7, Tr. 10). In particular, the ALJ found that the plaintiff's allegations were not entirely

supported by the objective medical evidence, and that there was no evidence to substantiate the plaintiff's claims that he had sought medical treatment from time to time and that back surgery had been recommended.  (Id.).  The ALJ also noted that there were "no treating or examining physicians or other health care providers who state that the claimant is disabled from all work activity."  (Id.).

The ALJ specifically rejected the plaintiff's argument, which was made by his counsel at the hearing, that Dr. Jao's opinion established an incontrovertible fact regarding Mr. Rizzo's capacity for light work.  (Id.).  The ALJ stated, as an initial matter, that his review of Mr. Rizzo's claim was de novo, and that he was not required to accept prior determinations in the case.  (Id.).  Additionally, the ALJ stated that he "agrees with the determination made by the Federal Reviewing Official, who placed the claimant's [RFC] at the medium level of exertion, with no other restrictions."  (Id.).  Although the ALJ emphasized that the Federal Reviewing Official's decision "was not considered to be evidence," the ALJ agreed with both the Federal Reviewing Official's finding regarding Mr. Rizzo's RFC, and the underlying reasoning for his finding, as set forth in detail in the Federal Reviewing Official's written decision.  (Id.; see also Dec. Finding #11, Tr. 12). According to the ALJ, that decision provided in pertinent part as follows:

> I note that in his [report] on January 9, 2007 assessment of your
> physical RFC, Dr. Jao concluded that you could only do light work.
> He found that you could lift and/or carry 20 pounds occasionally.
> You could lift and/or carry 10 pounds frequently, you could occa-
> sionally stoop, and that you must avoid concentrated exposure to
> hazards (machinery, heights, etc.).  I disagree with this opinion of
> Dr. Jao, as [it is] inconsistent with your physical examination

findings, and with the fact that you worked in 2000 and 2001 when you [had] the same conditions in your back that you now complain of.  I note that when you saw Dr. Thomson with the Massachusetts Disability Commission on December 29, 2006, you told him you had pain in your back and in your left lower extremity.  He found limited range of motion on forward bending, positive straight leg raise tests on the right and left leg, a positive bent leg test on the left leg, and dullness to pinprick on the left large toe and lower left leg.  As Dr. Thomson did not give any quantitative amounts notations about functional limitations, and found only "dullness" to pinprick, it is impossible to say that he found enough limitation to substantiate your claims of loss of function.  Additionally, when you went to see your treating physician Dr. Lynch on January 29, 2007, you did not tell him you had any pain in your lower left extremity, but only reported pain across your back.  Dr. Lynch found a mildly positive straight leg test on the left, but none on the right, but that your forward flexion and extension and your lateral bending and rotation were within normal limits, and that you were moving your lower extremities without significant difficulty.  As your most recent physical exam has shown only mild abnormalities that do not interfere with your functioning, I find that you have an RFC allowing you to stand/walk and sit for 6 out of 8 hours, frequently climb, balance, stoop, kneel, crouch and crawl, without the need to avoid concentrated exposure [to hazards].

(Dec. 7-8, Tr. 10-11 (quoting Decision of Federal Reviewing Official)).  While the

passage quoted by the ALJ did not specifically address the basis for the ALJ's conclusion

that Mr. Rizzo was capable of lifting and carrying the weight necessary to perform

medium work, the Federal Reviewing Official addressed that issue in her decision by

stating as follows: "In arriving at this RFC, I have considered the fact that you used to

attempt to lift 80 pounds, so frequently lifting 25 pounds is a significant reduction."  (Tr.

64).  Neither the Federal Reviewing Official nor the ALJ provided a more detailed

explanation for the conclusion that Mr. Rizzo could meet the lifting requirements for
medium work.

The ALJ determined that Mr. Rizzo had no past relevant work, so he went on to
determine whether, considering his age, education, work experience and RFC, there were
jobs existing in significant numbers in the national economy that Mr. Rizzo could
perform.  (See Dec. 8-9, Tr. 11-12).  As the ALJ explained in relevant part,

> In determining whether a successful adjustment to other work can be
> made, the undersigned must consider the claimant's [RFC], age,
> education, and work experience in conjunction with the Medical-
> Vocational Guidelines, 20 CFR Part 404, Subpart P, Appendix 2.  If
> the claimant can perform all or substantially all of the exertional
> demands at a given level of exertion, the medical-vocational rules
> direct a conclusion of either "disabled" or "not disabled" depending
> upon the claimant's specific vocational profile (SSR 83-11).

(Id.).

The Medical-Vocational Guidelines are referred to as the "Grid."  The ALJ
concluded that Mr. Rizzo was fifty-four years old, which is defined as an individual of
advanced age, on the date his application was filed, that he had at least a high school
education and was able to communicate in English, and did not have any transferable job
skills because he did not have any past relevant work.  (Dec. Finding #s 6-8, Tr. 11).
Given these facts, and the ALJ's finding that Mr. Rizzo retained the RFC to perform the
full range of medium work and had no non-exertional limitations established by objective
medical evidence, the ALJ concluded that a finding of "not disabled" was directed by
Grid Rule 203.14.  (Dec. 9, Tr. 12).  Moreover, because the vocational expert was able to

identify specific jobs at the medium unskilled level which could be performed by a person of Mr. Rizzo's age, education, work experience and RFC, the ALJ concluded that the plaintiff was capable of performing work that exists in significant numbers in the national economy, and that he was therefore not disabled.  (Id.).

It is undisputed that if the ALJ had adopted Dr. Jao's RFC assessment, or had otherwise found that Mr. Rizzo was capable of performing light work, the Grid Rules would have directed a finding of "disabled."  Specifically, Grid Rule 202.04 shows that an individual of advanced age with an RFC for light work, an education level of "High school graduate or more" and a work history of "Unskilled or none" is deemed to be disabled.  20 C.F.R. Pt. 404, Subpt. P, App. 2, Table No. 2.

Additional factual details relevant to this court's analysis are described below.

## III.  ANALYSIS

### A.    Standard of Review

Mr. Rizzo is seeking review of the Commissioner's "final decision" pursuant to the Social Security Act § 205(g), 42 U.S.C. § 405(g) ("the Act").  The Act provides in relevant part that:

> Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action ....  The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a

> rehearing. The findings of the Commissioner of Social Security as to
> any fact, if supported by *substantial evidence*, shall be conclusive ....

42 U.S.C. § 405(g) (emphasis added).  Thus, "[a] court may not disturb the Commis-

sioner's decision if it is grounded in substantial evidence."  Stahovich v. Astrue, 524

F. Supp. 2d 95, 96 (D. Mass. 2007).  The Supreme Court has defined "substantial

evidence" to mean "more than a mere scintilla.  It means such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion."  Richardson v.

Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971) (quoting

Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S. Ct. 206, 217, 83 L. Ed. 126

(1938)); accord Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir.

1991).

It has been explained that:

> In reviewing the record for substantial evidence, we are to keep in
> mind that "issues of credibility and the drawing of permissible
> inference from evidentiary facts are the prime responsibility of the
> Secretary."  The Secretary may (and, under his regulations, must)
> take medical evidence.  But the resolution of conflicts in the
> evidence and the determination of the ultimate question of disability
> is for him, not for the doctors or for the courts.  We must uphold the
> Secretary's findings in this case if a reasonable mind, reviewing the
> record as a whole, could accept it as adequate to support his
> conclusion.

Lizotte v. Sec'y of Health & Human Servs., 654 F.2d 127, 128 (1st Cir. 1981) (quoting

Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)).  Thus,

the "court's function is a narrow one limited to determining whether there is substantial

evidence to support the Secretary's findings and whether the decision conformed to

-16-

statutory requirements." Geoffroy v. Sec'y of Health & Human Servs., 663 F.2d 315, 319 (1st Cir. 1981). The Commissioner's decision must be affirmed, "even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence." Rodriguez Pagan v. Sec.'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987), cert. denied, 484 U.S. 1012, 108 S. Ct. 713, 98 L. Ed. 663 (1988). "Even in the presence of substantial evidence, however, the Court may review conclusions of law . . . and invalidate findings of fact that are 'derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts.'" Musto v. Halter, 135 F. Supp. 2d 220, 225 (D. Mass. 2001) (quoting Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam)) (additional citations omitted). This court finds that the application of these principles to the instant case compels the conclusion that the Commissioner's final judgment denying benefits was not supported by substantial evidence.

### B.   Statutory Framework

The plaintiff bears the burden of proving that he is disabled and entitled to SSI benefits. 20 C.F.R. § 416.912(a). Under the Social Security Act, an individual is considered "disabled" "if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The Act further provides that:

an individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy ....

42 U.S.C. § 1382c(a)(3)(B).

The Social Security regulations prescribe a "five step process to determine if an individual is disabled within the meaning of the Social Security Act." Seavey v. Barnhart, 276 F.3d 1, 5 (1st Cir. 2001) (citing 20 C.F.R. § 416.920 (2001)).  As noted above, this was the procedure followed by the ALJ in the instant case, and it resulted in the following analysis as detailed in the ALJ's "Findings of Fact and Conclusions of Law."  (See Dec. 4-9, Tr. 7-12).

The first inquiry is whether the claimant is "engaged in substantial gainful work activity[.]"  Id.  If so, the claimant is automatically considered not disabled and the application for benefits is denied.  See id.  Here, the ALJ determined that Mr. Rizzo had not engaged in substantial gainful work activity since the date of his application for benefits, so the ALJ proceeded to the next step.  (Dec. Finding #1, Tr. 7).

The second inquiry is whether the claimant has a "severe impairment," meaning "an impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 416.920(a)(4)(ii) and 416.920(c).  If not, the claimant is considered not disabled and the application is denied.  See Seavey, 276 F.3d at 5.  In the instant case, the ALJ found that Mr. Rizzo

-18-

suffered from the severe impairment of low back pain, so the analysis continued.  (Dec.

Finding #2, Tr. 7).

The third inquiry is whether the claimant has an impairment equivalent to a

specific list of impairments contained in the Social Security regulations' Appendix 1, in

which case the claimant would automatically be found to be disabled.  See Seavey, 276

F.3d at 5; 20 C.F.R. § 416.920(a)(4)(iii).  Because the ALJ determined that Mr. Rizzo did

not suffer from a "listed" impairment, his analysis continued.  (See Dec. Finding #3,

Tr. 9).

The fourth inquiry is whether "the applicant's 'residual functional capacity' is

such that he or she can still perform past relevant work[.]"  Seavey, 276 F.3d at 5.  If so,

he is not disabled.  See id.  It was at this stage in the analysis that the ALJ determined

that Mr. Rizzo retained an RFC for medium work.  (Dec Finding #4, Tr. 9).  However,

because he also concluded that Mr. Rizzo had no past relevant work, the ALJ reached the

final step in the analysis.

The fifth inquiry is whether, given the claimant's RFC, education, work

experience and age, the claimant is capable of performing any other work.  See Seavey,

276 F.3d at 5; 20 C.F.R. § 416.920(a)(4)(v).  If so, the claimant is not disabled.  If not, he

is disabled.  20 C.F.R. § 416.920(a)(4)(v).  At step 5, the Commissioner has the burden

"of coming forward with evidence of specific jobs in the national economy that the

applicant can still perform."  Seavey, 276 F.3d at 5.  As the First Circuit has explained,

> [i]f the applicant's limitations are exclusively exertional, then the
> Commissioner can meet her burden through the use of a chart
> contained in the Social Security regulations.  "The Grid," as it is
> known, consists of a matrix of the applicant's exertional capacity,
> age, education, and work experience.  If the facts of the applicant's
> situation fit within the Grid's categories, the Grid directs a
> conclusion as to whether the individual is or is not disabled.

Id. (internal quotations and citations omitted).  In the instant case, the ALJ determined

that Mr. Rizzo had no non-exertional limitations, and he relied on the Grid to conclude

that Mr. Rizzo was not disabled.  (Dec. 9, Tr. 12).  The plaintiff contends that this

decision was not based on substantial evidence because the ALJ used an improper RFC

when he applied the Grid.

### C.    The Plaintiff's RFC

The plaintiff contends that the ALJ was compelled to accept Dr. Jao's medical

opinion that Mr. Rizzo retained the RFC to perform only light work because it was the

only medical opinion in the record addressing Mr. Rizzo's RFC.  (See Pl. Mem. (Docket

No. 13) at 11-12).  Although this court disagrees that the ALJ was required to adopt

Dr. Jao's opinion, this court finds that the ALJ erred by assessing the plaintiff's RFC

without the support of an expert's assessment.

### The ALJ's Rejection of Dr. Jao's Opinion

"Determining a Social Security applicant's RFC is an administrative decision that

is the responsibility of the Commissioner.  In making an RFC determination on behalf of

the Commissioner, the ALJ must consider all relevant evidence in the record, including

the opinions and statements by all medical sources."  Hynes v. Barnhart, 379 F. Supp. 2d

220, 224 (D.N.H. 2004) (internal citations omitted).  "[T]he resolution of conflicts in the evidence and the drawing of conclusions from such evidence are for the [Commissioner]."  Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991).  Accordingly, the ALJ proceeded appropriately by considering Dr. Jao's opinion in light of the record as a whole and by providing reasons for his decision to reject Dr. Jao's opinion.  As set forth in his decision, the ALJ agreed with the Federal Reviewing Official's reasoning that Dr. Jao's opinion was not consistent with the findings of Mr. Rizzo's physical examinations, including his January 29, 2007 examination with Dr. Lynch, and with the fact that he had performed work in the early 2000s.  (See Dec. 7-8, Tr. 10-11).[6]

Moreover, as detailed above, Dr. Jao's RFC assessment was based on the plaintiff's complaints and his review of Dr. Thomson's neurological examination and the 2005 x-ray report from Whidden Memorial Hospital.  (Tr. 174).  Dr. Jao did not examine Mr. Rizzo, and did not review the records from the plaintiff's treating physician, Dr. Lynch.  Nor did Dr. Jao review the plaintiff's January 2007 MRI, which according to Dr.

---

[6] The plaintiff argues that the ALJ rejected the medical opinion of Dr. Jao in favor of the Federal Reviewing Official's opinion, and that it was improper to credit the opinion of a "non-physician federal bureaucrat" over the uncontroverted medical opinion of an agency physician. (Pl. Mem. at 12).  However, the ALJ made it clear that the Federal Reviewing Official's decision "was not considered to be evidence," and that he was simply agreeing with "the Federal Reviewing Official's conclusion on disability, and all of the substantive findings the Federal Reviewing Official made[.]"  (Dec. Finding #11, Tr. 12).  As detailed in the Federal Reviewing Official's decision and quoted in part in the ALJ's decision, those findings were based on facts in the record and did not purport to express medical opinions.  (See Dec. 7-8, Tr. 10-11; see also Tr. 58-66).

Lynch, was "[e]ssentially a benign negative MRI" and was unlikely to assist Mr. Rizzo with his disability claim.  (See Tr. 182).

Although the rule is not absolute, ordinarily, "a written report submitted by a non-testifying, non-examining physician who merely reviewed the written medical evidence could not alone constitute substantial evidence to support the [Commissioner's] conclusion."  Berrios Lopez v. Sec'y of Health & Human Servs., 951 F.2d 427, 431 (1st Cir. 1991).  "Such reports often contain little more than brief conclusory statements or the mere checking of boxes denoting levels of [RFC], and accordingly are entitled to relatively little weight."  Id.  Moreover, where, as here, the nonexamining physician "only reviewed a partial record, never seeing vital information contained in the unreviewed portion[,]" his report, while "entitled to evidentiary weight . . . cannot be the sole factor of an ALJ's decision."  Chelte v. Apfel, 76 F. Supp. 2d 104, 108 (D. Mass. 1999).  See also Gordils v. Sec'y of Health & Human Servs., 921 F.2d 327, 330 (1st Cir. 1990) (fact that consulting physician did not have complete medical record before him when forming opinion as to claimant's RFC "would be one factor counseling against assigning controlling weight to [the doctor's] functional conclusions standing alone.").  In the instant case, since Dr. Jao's opinion was not based on a complete record, it was not binding on the ALJ.[7]

---

[7]  If Dr. Jao had been a treating physician, or if his opinion had been based on a review of Mr. Rizzo's full medical record, this court may have concluded that the ALJ was required to accept it.  See Nguyen v. Chater, 172 F.3d 31, 34-35 (1st Cir. 1999) (ALJ's rejection of treating physician's opinion that claimant was incapacitated constituted error where treating physician's

## **The ALJ's Determination of Plaintiff's RFC**

The parties dispute whether the ALJ was qualified to make a determination that the plaintiff could meet the exertional requirements necessary to perform the full range of medium work.  It is undisputed that Dr. Jao's opinion was the only physical RFC assessment contained in the record, and that the ALJ reached his conclusion unaided by an alternative assessment.  This court finds that under such circumstances, the ALJ's conclusion regarding the plaintiff's RFC was not supported by substantial evidence.

Generally, "where an ALJ reaches conclusions about [a] claimant's physical exertional capacity without any assessment of residual functional capacity by a physician, the ALJ's conclusions are not supported by substantial evidence and it is necessary to remand for the taking of further functional evidence." Perez v. Sec'y of Health & Human Servs., 958 F.2d 445, 446 (1st Cir. 1991).  This is especially true where, as here, "the grid might well direct a finding of disabled were claimant able to perform only light work[.]" Rivera-Figueroa v. Sec'y of Health & Human Servs., 858 F.2d 48, 52 (1st Cir. 1988) (questioning "ALJ's ability to assess claimant's physical capacity unaided even by an RFC assessment from a nonexamining doctor").

---

diagnosis was supported by other medical evidence in the record, ALJ's reasons for rejecting treating physician's opinion lacked support, and no medical opinion supported ALJ's finding that claimant had capacity to perform full range of sedentary work).  However, because Dr. Jao's opinion, without more, did not provide substantial evidence upon which to base a decision, this court concludes that in this case, the ALJ did not commit error by refusing to rely upon it.

The Commissioner argues that the ALJ was entitled to make a "common sense" judgment about the plaintiff's RFC based on the medical and other evidence in the record. (Def. Mem. (Docket No. 15) at 13-14). This principle is not applicable here. An ALJ is not "precluded from rendering common-sense judgments about functional capacity based on medical findings, <u>as long as</u> the [ALJ] does not overstep the bounds of a lay person's competence and render a medical judgment." <u>Gordils v. Secy of Health & Human Servs.</u>, 921 F.2d 327, 329 (1st Cir. 1990) (emphasis added). <u>See</u> <u>also</u> <u>Manso-Pizarro v. Sec'y of Health & Human Servs.</u>, 76 F.3d 15, 17-18 (1st Cir. 1996) (question whether substantial evidence supported ALJ's finding that claimant retained RFC to perform medium-level work depended upon whether medical evidence "suggest[ed] a relatively mild physical impairment posing, to the layperson's eye, no significant exertional restrictions"). As the First Circuit has explained,

> where the medical evidence shows relatively little physical impair-
> ment, an ALJ permissibly can render a common-sense judgment
> about functional capacity even without a physician's assessment.
> But when, as now, a claimant has sufficiently put [his] functional
> inability ... in issue, the ALJ must measure the claimant's capabili-
> ties, and "to make that measurement, an expert's RFC evaluation is
> ordinarily essential unless the extent of functional loss, and its effect
> on job performance, would be apparent even to a lay person."

<u>Id.</u> at 17 (quoting <u>Santiago v. Sec'y of Health & Human Servs.</u>, 944 F.2d 1, 7 (1st Cir. 1991)). This court finds that the extent of Mr. Rizzo's functional loss would not be apparent to a layperson.

As an initial matter, none of the medical professionals who were seen by Mr.
Rizzo described their medical findings in functional terms.  In particular, none of the
treating or examining physicians indicated one way or the other whether Mr. Rizzo's
back pain limited his ability to lift weight.  Accordingly, there are no specific facts in the
medical evidence supporting the ALJ's conclusion that the plaintiff was capable of lifting
50 pounds occasionally and 25 pounds frequently.[8]

While there is evidence to suggest that Mr. Rizzo's back pain was relatively mild,
the extent to which the plaintiff's functional abilities may have been affected by his back
condition is not apparent from that evidence.  For instance, in his report of his January
29, 2007 examination of the plaintiff, Dr. Lynch noted that Mr. Rizzo experienced some
"mild lower lumbar tenderness" and "mild myofascial tightness," and that he had "mildly
positive" straight leg raises.  (Tr. 184).  Additionally, after examining Mr. Rizzo in
February 2007, and reviewing the results of his MRI, Dr. Lynch diagnosed the plaintiff
with "[d]isc bulging with herniation," and reported that the plaintiff had "no significant
degenerative changes," "[e]ssentially a benign negative MRI" and "some myofascial
tightness," which Dr. Lynch attributed more to "deconditioning."  (Tr. 182).  Although
Dr. Lynch's characterization of Mr. Rizzo's back condition might arguably indicate to a

---

[8] This court notes that the specific facts relied on by the Federal Reviewing Official to
determine the plaintiff's capacity for lifting and carrying are unpersuasive.  The fact that Mr.
Rizzo attempted to lift 80 pounds, and injured his back in the process, does not reasonably
support a conclusion that the plaintiff could lift 25 pounds frequently, as the Federal Reviewing
Official determined.  (See Tr. 64, 151).

lay person that the plaintiff would not be precluded from performing sedentary work, it is not apparent from this evidence that Mr. Rizzo would be capable of performing medium level work. See Berrios Lopez, 951 F.2d at 432 (medical findings of a "relatively mild left knee condition," described by examining physician as "mild effusion into left knee with no edema and good range of motion in all joints[,]" insufficient to support conclusion that claimant could perform light work) (internal quotations omitted); Gordils, 921 F.2d at 329 (where consulting physician found no objective evidence of disabling back impairment beyond observation that claimant likely had a "weaker back," court found Commissioner justified in treating physician's findings as evidence for the conclusion that claimant had RFC to perform full range of sedentary work, but "would be troubled by the same conclusion as to the more physically demanding light work").

Furthermore, the record contains evidence which suggests that Mr. Rizzo's impairment may have been more significant than Dr. Lynch's records reflect. For example, but without limitation, x-rays taken of Mr. Rizzo's back in 2005 and 2007 revealed the presence of large osteophytes at the L3-L4 level, and "some degenerative disc disease" at L4-5, L5-S1. (Tr. 150, 184). This evidence further undermines the Commissioner's argument that it was appropriate for the ALJ to determine the plaintiff's RFC in the absence of a supporting expert evaluation. Because the ALJ, as a layman, "[was] not qualified to assess residual functional capacity based on a bare medical record[,]" his decision that Mr. Rizzo was not under a disability was not supported by substantial evidence. Gordils, 921 F.2d at 329.

D.      **Nature of Relief**

The plaintiff requests that this court remand his case to the Commissioner for payment of benefits, or in the alternative, for further development of the record.  This court finds that the circumstances of this case warrant a remand for further development of the factual record.  As indicated above, where, as here, the ALJ reaches a conclusion about the claimant's physical exertional capacity without the support of an RFC by a physician, generally "it is necessary to remand for the taking of further functional evidence."  <u>Perez</u>, 958 F.2d at 446.  <u>See also</u> <u>Manso-Pizarro</u>, 76 F.3d at 19 (remanding case for additional evidence of functional ability where ALJ erred by determining RFC without support of an expert's evaluation).  Accordingly, the matter will be remanded to the Commissioner for further development of the record regarding the plaintiff's exertional limitations.

## IV.  CONCLUSION

For all the reasons detailed herein, the plaintiff's "Motion to Reverse the Decision of the Commissioner of Social Security" (Docket No. 12) is ALLOWED IN PART and DENIED IN PART.  Specifically, the plaintiff's request for an order awarding benefits is denied, but his request to remand the matter to the Commissioner is allowed for further development of the record regarding the plaintiff's RFC.  The "Defendant's Motion for an Order Affirming the Decision of the Commissioner" (Docket No. 14) is DENIED.

                                                    / s / Judith Gail Dein

-27-

Judith Gail Dein
United States Magistrate Judge